May it please the Court, my name is John Sluder. I represent the appellants, Mario Sotelo and other appellants. Okay. And before you begin, you're the case that was moved from Monday to Wednesday? Yes, Your Honor, that's true. The Court thanks you for your willingness to accommodate our schedule and thanks you for sitting through a long morning. So with that, please go ahead. Ever since I've been a young man, I've enjoyed doing this kind of thing, watching Court proceedings. Okay. To remind the Court, this is a case concerning the breakup of a band called Los Cominantes. My own client was a member of it since about 1986 through 2013 with a small break. During that time, my client had a substantial role in the band. He determined who to hire. He determined what music to play during the performances and how to play it. He actually wrote music and he participated in the production of the albums. In October of 2013, Mr. Ramirez, the plaintiff in this case, acquired a registration of the trademark and two weeks later, Mr. Sotelo was out of the band. Now the band is disputing who can use that trademark. And there is a case called Robey v. Reed that says a person who is continuously involved in a band and participates in the, or has some control over the, is in a position to control the creative output of the band, has a right to use that trademark. The district court disagreed and imposed a temporary restraining order and that's what we're challenging today. But it matured into a preliminary injunction, did it not? Yes. I'm sorry. Yes, the Court is correct. Now the Federal Rules of Civil Procedure authorize a court in an appropriate case with the, at least notice to the parties, to bring forward in time final consideration on the merits and consolidate it with a preliminary injunction. Was that done in this case? It was not. All right. So at least there's the potential for the parties to fight this battle down the road. It is. And although I did not put this in my brief, the problem is that under certain state causes of action that are also allegedly the federal causes of action, one of the things that the person has to prove is that the mark is associated with the person claiming it. Up until 2013, the mark Los Cominantes was not associated with Mr. Ramirez, it was associated with the entire band. Because when people went to see Los Cominantes, they saw all of the musicians, including my client, since 1986. And now, you know, that Mr. Ramirez is able for this period between the time of the temporary restraining order and the trial on the matter, he's able to become the face of Los Cominantes using the court, in fact, and using this restraining order as a way to pump up his case on some of the state causes of action. My client would like to be able to use this because every day that he's not, every weekend that he's not playing with a name that he used since 1986, he's losing ground. Well, with the name of the band for which he played for many years, I'm not sure a name that he used because that gets to the question of the ability to use the mark. It seems to me that the central question here is not the validity of the mark, but rather who has the right to register it. And I think he doesn't have the right to share in the mark unless he's a partner. So the real question in front of us is whether he's a partner. Absolutely. That is exactly the question. The evidence that he is not, or the evidence that he's a partner is very thin, and the evidence on the other side that he's not a partner is very strong. How do we get around the fact that this is not a full determination of the merits, but it's a likely success on the merits? It seems to me, as I look at the evidence we now have in front of us, your client's likely to lose on the partnership question. Let me say two things about that. For one thing, for a preliminary injunction, the requirement is a clear showing and not just a likelihood. But let me address the likelihood, because if I agreed with the court, I would fold my cards. I disagree with the court, and I disagree with the district court, and I disagree with Mr. Iyer. I disagree with Mr. Ramirez. And the difference between, I think, my analysis and the analysis of the district court is that I don't ‑‑ I think the district court has conflated the primary holder argument with the partnership argument. And I see that argument, the fact that Mr. Ramirez was the first one to use this and used it for a longer period of time and used it more continuously has infused the court's partnership analysis, but it's really not a part of partnership analysis. And the reason I say that is, for example, I don't know why it's important what happened during the Whitewater era or when the Atlanta Olympics were opening. And that's the evidence that the court says, district court says, makes Mr. Ramirez's position strong. But the fact is that personal relations and business relationships evolve as time goes by, and that was 18 years ago. And what the court has said is the fact that Mr. Ramirez is able to produce documents showing what his intention was or what his belief was 18 years ago dictates what is going on in 2013, 18 years later. I don't consider that to be particularly strong evidence. And I think that the court below is infused by this idea that the first holder is the person who has the most right. But that's not a partnership element. A person might be a new associate in 1986, and nobody's going to let him participate in management. But as time goes by, trust grows and his expertise grows. So 18 years later, he's actually helping make decisions for the law firm, which he was in 18 years before. So the reason the district court thought it was strong was because it had an idea that people's attitudes don't change and people's roles don't change over time. Let me ask you this. Is there evidence that the district court was required to believe that your client ever shared in the profits of the band? Well, it wasn't required to believe, no. So what evidence did you have and how strong was it? Well, you have my client's testimony that they actually divvied up the results of the road trips. In other words, they'd get paid, they'd have to pay certain things for expenses, and certain parts of the road trip income went to salary, and everybody was paid a salary, including Mr. Ramirez. And what was left over, that would be divvied up among the members of the band. So that's a sharing in the profit. Now, that kind of divvying up can sometimes be characterized as bonuses. I mean, I understand that the accounting might not necessarily have sort of adhered to sort of, I guess, GAAP, generally accepted accounting principles. So profits may be a little bit elusive here. But we've got evidence from Mr. Ramirez that your client was always a paid employee. Well, and Mr. Ramirez was always a paid employee as well because he, like my client, got a salary. So you could say the same thing about Mr. Ramirez. Look, you got paid a salary, and if he claims to be a partner and he got paid a salary, why does the fact that my client got paid a salary mean that my client was necessarily an employee as opposed to a partnership, particularly when you look at some of the documented evidence that he had a substantial role? I mean, we have – So with respect to the payroll, then, once the – if they'd been on a road trip and salaries were paid to everybody, including Mr. Sotelo and Mr. Ramirez, then what was left over and how was that divided up? What share did your client get? Well, I'll have to answer that two ways. One is what it was in theory and what it was in actual practice. What happened was that a lot of these – the court referred to maybe elusive, generally accepted accounting practices. This was basically cash they were paid by the people putting on the show. And so Mr. Ramirez would get a big wad of cash. And the theory was that all of the band members were paid equally. That's what my client said in his – Now, that's the salary? No, no. Salaries paid off the top? Okay, and how much would your client get? Oh, I – you know, it varied from road trip to road trip, and I do not have that answer. And do you have – do you know how much was in the – with the percentage with respect to Mr. Ramirez? He got half what he did? He got three-quarters? In theory, as my client said in his declaration, what they were supposed to do, what the agreement was among them is that all band members, including Mr. Ramirez, would share equally. Now, as actual practice, Mr. Sotelo, his understanding is that Ramirez probably put a little bit more in his pocket than he put in other people's pocket. For one thing, he actually picked up the cash, so he was in a position to do that. It was unstated, probably understood, probably not a big deal because – Okay, so the money that was left over, then how was that divided? After you paid the salary? Handed out. I mean, is that the court – it was handed out. It was to be handed out equally? It was. Equally, just to the principals? Did they have supporting band members, the people who handled the acoustical equipment? Just to the band members, the performers. So I think, you know, when you look at the recent evidence about what's going on, when you look at the recent documentation, you're really looking at a word – you're looking at one person's word against another because, you know, nobody has ever made me a judge. But I am not as impressed by, you know, documents as old as 1988 as the district court was in this case. And I'm also impressed with the case, Robey v. Reed, that talks about people who remain continuously involved in band and who are in a position to control the quality of it are entitled to use the name. And the district court kind of turned that around. The court said, well, Mr. Sotelo was gone for about 18 months or two years back in 2000, 2001. So he wasn't continuously involved. But Mr. Ramirez was continuously involved since the beginning of the band. Therefore, Mr. Sotelo was the only partner. I just don't think that partnership law, people's experience of partnerships, and Robey v. Reed supports that interpretation. That was an error of law on the part of the district court. So if I may, I'll reserve the rest of my time. Let's hear from the other side, and then you've got three minutes. I'm grateful, Your Honor. Please, the Court. Good morning. My name is Steve Iyer, the attorney for Agustin Ramirez and the other plaintiffs in this case. On behalf of the panel, our thanks for your willingness to move to the day. Well, I want to thank the panel for moving us to Wednesday. It actually made it more convenient for me, too. So I guess there are thanks to be had all around. Your Honor, Mr. Sotelo is arguing this case without really any evidence of the fact that he participated as a partner. And with that paucity of evidence, I don't know what else the Court could decide other than what it did. And that decision is entitled to deference. There's no showing of an abuse of discretion by the Court in making its decision in issuing the preliminary injunction. It looks like the Court is focusing on the partnership issue, and that seems to be what has been the focus of Mr. Sotelo's argument. And the Court looked at the arguments that were made by Mr. Sotelo and rejected them, basically, because there was no evidence of partnership. As to Mr. Sotelo's declaration, which goes on for six pages or seven pages, there is just one paragraph in which he addresses the issue of splitting. He makes no mention of how much anybody received. The Court asked Mr. Schluter how much Mr. Sotelo received, and we had that answer. It's there in the documentation. He received $1,100 a week. That was his salary that he received. He received a fixed salary. He did not receive a share of the profits. Arguments that he made as far as controlling or hiring people were rejected by Mr. Ramirez, who said, I was the only one authorized to hire anybody, and I controlled the purse strings, so that is something that I would be doing. And Mr. Sotelo concedes in his declaration that he had no idea how much money anyone received because Mr. Ramirez controlled the purse strings. He said, I don't know how much Agustin Ramirez received, but I assume he took more, but I don't know. So he basically had no control over the money. I did not bring up an issue. I was looking for the case when I was doing the briefing. I couldn't find it. I had run across it in a previous case involving trademarks, and it's a case out of the Sixth Circuit that I just wanted to bring to the Court's attention. I don't know if it makes that much difference because we're talking about the Court has been focusing a bit on the partnership issue here, but the holding there was the case is E.F. Pritchard, and it's 136 F2D 512 at 521, and it's a 1943 case, so it's quite an old case. But it's a case that states that one who is an owner of a trademark does not, by entering a partnership and permitting the use of the trademark by the partnership, transfer his interest in the trademark to the firm. It's interesting. Mr. Sotelo never specifies when he believes he became a partner. Mr. Ramirez shows evidence from 1988 that he wasn't a partner then. When they filed a lawsuit in 1990, he wasn't a partner then. When they had entered into an agreement regarding a buyout of one of the partners in 1996, he wasn't a member. And even though he says this is all old evidence, even in the Obama administration using his analogy in 2011, we have evidence of a partnership return filed by those who were the partners at the time before one of them died, and Mr. Sotelo is not involved in any of that documentation. He does not specify, he never argues, either the court below or in his appellate brief. When it is he believes that he acceded to a partnership interest in the group and basically has provided no evidence either below or at this time to show that. So we would ask the court to affirm the decision of the court below that it was properly decided and leave the preliminary injunction in place. Thank you. Thank you. Mr. Schroeder. Thank you, Your Honor. Back in law school, they taught us the difference between physical evidence and moral evidence. In fact, moral evidence used to be what was spoken about in the reasonable doubt instruction. Moral evidence oftentimes being the evidence given under oath, which the jury uses to make a determination. What they do is they watch people and they listen to them and they determine whether this person is innately credible, seems honest. The trial judge vested with responsibility to decide the case, didn't he examine the credibility of the witnesses and reach a conclusion? He did not. Well, what he did was he read the declarations. There was no live testimony. There was no live testimony. Did you ask to put on live testimony? Well, there was a hearing set. I had intended to present testimony. I had expected to have testimony, but he issued his decision stating that he decided to rule without hearing evidence, without a hearing. So I did not have the opportunity. And I don't think that moral evidence, the evidence of somebody testifying in court should be disregarded out of hand. It's true what counsel says. There were partnership returns filed in 2011. Two things about that. That seems to be when Mr. Ramirez was planning to trademark this. That easily could have been within the time Mr. Ramirez was planning to trademark this band name and then ditch his partner as the fame of Los Caminantes was retreating and people were fighting, worrying about whether there was enough of the pot to split up. And the other thing is all it goes to is what they thought. And as the statutes that I've identified in the brief indicate, a person's intention is not what matters. The actions of the parties, the control of the creativity, the sharing in the profits are what matters. So I don't even think that evidence is particularly important. And since counsel did not blank out the, did not furnish the salary of his client, nor and he blanked out the amount that he claimed as partnership interest, I don't even know if Mr. Ramirez claimed that divvy, the cash payments. So I think that based on the law, based on Roby versus Reed, the court should reverse the district court and I thank the court for its attention. Okay. Thank both sides for your arguments. Ramirez versus Sotelo now submitted for decision. And that completes our arguments for this morning.
judges: Singleton, Fletcher, Bybee